UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID J. WILLIAMS (#333462)

VERSUS                                              CIVIL ACTION

TIM DELANEY, ET AL                                  NUMBER 11-165-JJB-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 5, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID J. WILLIAMS (#333462)

VERSUS                                              CIVIL ACTION

TIM DELANEY, ET AL                                  NUMBER 11-165-JJB-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the plaintiff's Memorandum in Support of Cross Motions for Summary Judgment (record document numbers 84 and 85-1), the Motion for Partial Summary Judgment filed on behalf of defendants Asst. Warden Tim Delaney, Capt. Cody Butler, Sgt. Anthony Woods, Maj. Joseph Hooker, Maj. William "Trampus" Butler, Lt. James Savoy, Capt. Terry Sharp and Lt. Col. Chad Oubre (record document number 78) and the Motion for Partial Summary Judgment filed on behalf of defendant Capt. Mark Sharp (record document number 81). The motions are opposed.[1]

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Asst. Warden Tim Delaney, Capt. Terry Sharp, Capt. Cody Butler, Lt. Col. Chad Oubre and Maj. Joseph Hooker.[2] Plaintiff amended the complaint to add Warden Burl Cain, Col. Bobby

---

[1] Record document numbers 86, 83 and 85, respectively.

[2] Record document numbers 1 and 10.

Achord, Dr. Jonathan Roundtree, Maj. William T. Butler, Lt. James Savoy, Capt. Mark Sharp and Sgt. Anthony Woods as defendants.[3] Plaintiff alleged that he was subjected to an excessive use of force in violation of his constitutional rights.[4]

Plaintiff moved for summary judgment relying on a statement of undisputed facts, copies of an administrative grievance ("Administrative Remedy Procedure" or "ARP") dated October 4, 2010, and a copy of a Lost Personal Property Claim Response, copies of an Appeal from the Disciplinary Board dated October 6, 2010 and the Appeal Decision, Disciplinary Board Appeal Number LSP-2010-0525-W, copies of letters to Warden Cain, Investigative Services and other federal officials, a copy of an ARP dated October 31, 2010, the plaintiff's affidavit and the declaration of Jatazz Warren, and a copy of the plaintiff's medical duty status report.  Plaintiff also relied on exhibits filed in support of the defendants' partial motion for summary judgment.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Dr. Jason Collins, Asst.

---

[3] Record document numbers 39 and 61.

[4] Plaintiff's claims against defendants Warden Cain, Col. Achord and Dr. Roundtree were previously dismissed.  Record document number 72.  In addition, the plaintiff's claim that he was issued a false disciplinary report and all of his claims against defendants Capt. Butler, Lt. Savoy and Capt. Sharp were previously dismissed, except for the plaintiff's claim that he was subjected to an excessive use of force on October 6, 2010. *Id*.  Finally, the court declined to exercise supplemental jurisdiction over any state law claim. *Id*.

Warden Delaney, Capt. Butler, Maj. Hooker, Lt. Col. Oubre, Lt. Savoy, Maj. Butler, Sgt. Woods and Terry Sharp, copies of Louisiana State Penitentiary Directive No. 09-003 and No. 09-002, copies of Camp C Tiger 1 Logs, copies of the plaintiff's medical records and a copy of ARP LSP-2010-3001.

## Applicable Law

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c).

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the

defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id*., at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

At the time of the alleged incident, a reasonable corrections officer would have known that spraying a prisoner with a chemical agent and beating him without provocation was not objectively reasonable. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986) (force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline).

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, *supra*; *Whitley v. Albers*, *supra*. A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

There is conceptual distinction between the *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy*, 559 U.S. 34, ___, 130 S.Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). To prevail on an Eighth Amendment excessive force claim, the plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline,

[but] maliciously and sadistically to cause harm," and that he suffered an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000. The absence of serious injury, while relevant to the inquiry, does not preclude relief. The Fifth Circuit Court of Appeals has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an Eight Amendment excessive force claim. *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve the defendants of liability for using excessive force. *See Wilkins*, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is considered in conjunction with the other *Hudson* factors to help determine whether the force used was excessive. *See Brown,* 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'") (quoting *Whitley*, 475 U.S. 321, 106 S.Ct. 1085).

## Analysis

Plaintiff alleged in his verified complaint[5] that he was subjected to an excessive use of force after criticizing a correctional officer regarding the manner in which the officer searched his cell. Specifically, the plaintiff alleged that on October 6, 2010, a group of security officers entered the hallway of the tier where he was confined on and he attempted to speak to Asst. Warden Delaney about an ARP and a lost property claim that he had recently submitted to prison officials.

Plaintiff alleged that he spoke to Asst. Warden Delaney and Capt. Sharp and admittedly criticized these security officers, asking Capt. Sharp why he had "messed over" the plaintiff's property. Plaintiff alleged that in response his comments, Asst. Warden Delaney approached his cell and said, "[y]ou need to talk better than that", and instructed him to pack his belongings. Plaintiff alleged that Asst. Warden Delaney then ordered him to

---

[5] A review of the record showed that the plaintiff filed a verified complaint which contains a version of the incident substantially different than the version recounted by the defendants. The court can properly treat this verified pleading as an affidavit in opposition to the defendants' motion for summary judgment since the plaintiff was competent and made the assertions based on personal knowledge. *See, Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77 (5th Cir. 1987).

7

remove all clothing. Plaintiff alleged that after he was naked Asst. Warden Delaney instructed him to open his mouth, raise his arms, pick up his feet, raise his testicles, and to bend over and spread his buttocks. Plaintiff alleged that after he complied, Asst. Warden Delaney left the tier with his clothing.

Plaintiff alleged that moments later, Asst. Warden Delaney returned to his cell and repeatedly ordered him to bend over and spread his buttocks, which he did. Plaintiff alleged that Asst. Warden Delaney then ordered him to come to the cell bars and accused him of not complying with his order to spread his buttocks. Plaintiff alleged that Capt. Mark Sharp (or possibly Capt. Cody Butler) approached suddenly and sprayed a chemical irritant into his eyes and mouth. Plaintiff alleged that Asst. Warden Delaney authorized the use of a chemical irritant on him and failed to intervene on his behalf when it was apparent that he was being subjected to an excessive use of force. Plaintiff alleged that Sgt. Woods was aware of the unprovoked use of force and failed to intervene on his behalf.

Plaintiff alleged that after he was sprayed with a chemical irritant he screamed, stomped his foot on the floor and hit the side of his sink with his hand for approximately one and a half minutes, thereafter stopping without being ordered to do so.

Plaintiff alleged that approximately five minutes later an unidentified corrections officer ordered him to bend over and

8

spread his buttocks, and he again complied. Plaintiff alleged that notwithstanding his compliance, a cell-entry team was thereafter summoned, consisting of Maj. Hooker, Lt. Col. Oubre, Maj. William Butler and Lt. Savoy, and one of the members of the team instructed him to lie on the floor of his cell with his arms outstretched. Plaintiff alleged that after he complied with this directive, the team entered his cell and, although he allegedly offered no resistance, members of the team shocked him with an electronic capture shield, utilized a taser on him, hit him numerous times with a baton, and kicked and punched him about the face, head and body. Plaintiff alleged that Maj. Terry Sharp struck his brachial plexus. Plaintiff alleged that he was punched in the face 30 to 45 times, Lt. Col. Oubre struck him in the ear and side 15 to 25 times, Maj. William Butler and/or Maj. Hooker shocked him with a taser two to three times and punched him in the back 10 to 15 times, Lt. Savoy beat him on his neck, shoulder, arm and ribs 35 to 45 times with a billy stick, and Capt. Terry Sharp gave him several blows to the brachial plexus. Plaintiff alleged that the assault in his cell lasted for approximately 10 to 17 minutes. Plaintiff alleged that he endured approximately 200 blows, all while in cell 5.

Plaintiff alleged that he was then dragged down the tier and placed in a shower cell where, shortly thereafter, the defendants again entered the cell and again began to kick, punch, shock him

9

with a taser and strike him with a billy stick. Plaintiff alleged the assault went on for approximately five to six minutes. Plaintiff alleged that Maj. Hooker or Maj. William Butler personally spread his buttocks and touched his anus. Plaintiff alleged the defendants resumed punching him. Plaintiff alleged that Lt. Col. Oubre punched his head and face 10 to 15 times and his ear and side six to 10 times, Lt. Savoy punched and hit him with a billy stick on his shoulder, arm, side and leg 10 to 12 times, and either Lt. Savoy, Maj. William Butler or Maj. Hooker shocked him with a taser twice on the back and once on the front of his body before Maj. William Butler or Maj. Hooker punched him on his back and kidney area five to eight times. Plaintiff alleged that Lt. Col. Oubre and Lt. Savoy pinned his shoulders down while either Maj. Hooker or Maj. William Butler once again spread his buttocks and touched his anus. Plaintiff alleged that defendants Lt. Col. Oubre, Lt. Savoy and either Maj. Hooker or Maj. William Butler resumed punching him for two to three minutes.

    Plaintiff alleged that he was ordered to come the cell bars and put on a jump suit. Plaintiff alleged that he was restrained and taken out of the shower and placed inside a truck on the back seat. Plaintiff alleged that he was once again beaten during the transport to the prison infirmary. Plaintiff alleged that he was struck with a billy stick for three to five minutes and with random punches to the head and side. Plaintiff alleged that he sustained

10

240 to 285 blows during the entire incident.

Plaintiff alleged that he sustained injuries to his head, neck, shoulder, back and ribs. Plaintiff alleged that he sustained several cuts to his head which bled and burns to his stomach and ribs. In addition, the plaintiff alleged that his eyes were irritated and he choked on the chemical irritants.

Defendants offered a different version of the incident. Defendants Asst. Warden Delaney and Capt. Cody Butler contend that on the day of the incident they attempted to conduct a routine search of the plaintiff's cell.[6] Plaintiff refused to cooperate with the search of his cell and began causing a loud disturbance.[7] Asst. Warden Delaney left the tier.[8] Capt. Cody Butler gave the plaintiff several direct orders to cease the disturbance and come to the cell bars to be restrained.[9] When the plaintiff refused to comply, Capt. Cody Butler administered two separate one second bursts of chemical agents to quell the disturbance and restore order.[10] Plaintiff continued to refuse to comply with orders after

---

[6] Record document numbers 78-8 and 78-9.

[7] *Id.*

[8] *Id.*

[9] Record document number 78-9.

[10] *Id.*

being sprayed with the chemical agents[11] and Asst. Warden Delaney asked the control center to dispatch a cell extraction team.[12]

Sgt. Woods contends that on the day of the incident he was working security at the Tiger 1 and 2 cellblocks at Camp C on the B-team shift.[13] Sgt. Woods was stationed in the tier lobby, which is a secured area located at the end of, and adjacent to, the tier block walk.[14] Sgt. Woods contends that he remained at his assigned post in the tier lobby and was unaware that the plaintiff was being subjected to an unprovoked use of force by other corrections officers.[15]

Defendants contend that the cell extraction team consisted of Maj. Hooker, Lt. Col. Oubre, Maj. William Butler, Maj. Terry Sharp and Lt. Savoy.[16] Defendants contend that the team stacked in front of the plaintiff's cell and gave him a direct order to approach the cell bars.[17] Defendants contend that when the plaintiff refused to comply, the electronic capture shield was arced and the plaintiff

---

[11] *Id.*

[12] Record document number 78-8.

[13] Record document number 78-14.

[14] *Id.*

[15] *Id.*

[16] Record document numbers 78-10, 78-11, 78-12, 78-13 and 78-16.

[17] *Id.*

12

was once again ordered to come to the cell bars.[18] When the plaintiff refused to comply, Maj. Hooker gave orders to open the cell door.[19] Defendants contend that the plaintiff was met with the electronic capture shield and was driven to the back of his cell and taken to the floor where he continued to resist.[20] Maj. William Butler applied one five second arc on the plaintiff but he was unaffected because the shield was not operating properly.[21] Plaintiff was brought under control and was escorted to the shower, issued a clean jumpsuit and was then escorted to the treatment center.[22]

Lt. Col. Oubre and Lt. Savoy contend that they escorted the plaintiff to the treatment center.[23]

Defendants argued that they applied only the amount of force necessary to gain control over the plaintiff and to restore order to the institution. Defendants contend that the incident was over in just a few minutes and the plaintiff did not sustain injuries consistent with the beating he alleged he was administered or suggestive of an excessive use of force.

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Record document number 78-13.

[22] Record document number 78-10.

[23] Record document numbers 78-11 and 78-12.

Defendants argued that because there is no objective medical evidence to support a finding that the plaintiff sustained more than a *de minimis* injury as a result of the alleged use of force, they are entitled to summary judgment as a matter of law.

Plaintiff's medical records showed that on October 6, 2010, the plaintiff was examined by medical personnel after the cell extraction.[24] Plaintiff's medical records showed that the plaintiff sustained superficial abrasions on the top of the foot as well as the left abdominal.[25] A minor contusion was noted on the posterior right upper arm approximately four centimeters in diameter and the posterior left shoulder approximately three centimeters in diameter.[26] X-rays of the skull, chest and cervical spine were negative and revealed no head or neck trauma.[27] There was no hematoma, bruising or lacerations.[28] Plaintiff was prescribed Tylenol® and was referred to mental health for evaluation.[29]

Plaintiff was examined on October 10, 2010 for complaints of

---

[24] Record document number 78-6, p. 4.

[25] *Id.*; record document number 78-7.

[26] *Id.*

[27] Record document number 78-6 at pp. 7-8, 16; record document number 78-7.

[28] Record document number 78-6.

[29] *Id.*

pain to his arm, ribs and leg.[30]  There was no sign of trauma or bleeding and no bruising or discoloration was noted.[31]  The abrasion on the top of his foot was scabbed over with no sign of infection.[32]  No additional medication or treatment was required.[33]

Defendants' summary judgment affidavits, stating that the plaintiff sustained only a small abrasion and two contusions, directly contradict the plaintiff's allegation of severe injury.  But even if the medical records show that the plaintiff could prove only that he suffered a small abrasion and two contusions, this is not per se a *de minimis* injury.

There are also significant material facts in dispute regarding the remaining *Hudson* factors, i.e., need for the application of any force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need.  *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999.  Resolution of these disputed factual issues will turn on the credibility of the witnesses and weighing of the evidence.  When ruling on a motion for summary judgment, the court cannot make

---

[30] Record document number 78-6 at 15; record document number 78-7.

[31] *Id.*

[32] *Id.*

[33] *Id.*

credibility determinations nor weigh the evidence.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's Memorandum in Support of Cross Motions for Summary Judgment (record document numbers 84 and 85-1), the Motion for Partial Summary Judgment filed on behalf of defendants Asst. Warden Tim Delaney, Capt. Cody Butler, Sgt. Anthony Woods, Maj. Joseph Hooker, Maj. William "Trampus" Butler, Lt. James Savoy, Capt. Terry Sharp and Lt. Col. Chad Oubre (record document number 78), and the Motion for Partial Summary Judgment filed on behalf of defendant Capt. Mark Sharp (record document number 81), each be denied and that this matter be referred back to the magistrate judge for further proceedings.

Baton Rouge, Louisiana, February 5, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE